Alvera RIES, Plaintiff,

v.

Roger W. SANDERS, Defendant.

No. E–C–61–62.

United States District Court
N. D. Mississippi, E. D.

Feb. 14, 1964.

W. P. Mitchell, Tupelo, Miss., for plaintiff.

Joe H. Daniel (of Daniel, Coker & Horton), Jackson, Miss., Richard B. Booth, Aberdeen, Miss., for defendant.

CLAYTON, District Judge.

This personal injury damage suit was tried to a jury on complaint and answer. The case arose from the collision of two automobiles in an intersection in the City of Aberdeen, Mississippi. One of the automobiles was driven by plaintiff's husband and plaintiff was riding in it. The other automobile was driven by defendant and this was admitted in his answer. The complaint alleged negligence on the part of defendant which proximately caused or contributed to the collision, while the answer denied negligence on the part of defendant and al-

leged that plaintiff's husband was guilty of the whole of the negligence which caused the collision. Verdict was for plaintiff in the amount of $5,000 and judgment was entered thereon.

Plaintiff filed a motion for a new trial *as to damages only* and defendant filed a motion for a judgment *non obstante veredicto*.[1] Both of these motions have been submitted on memorandum briefs and are now for disposition. Defendant's motion must be considered first.

▪ Defendant made a motion for a directed verdict which was overruled and he submitted a special request for an instruction for a directed verdict which was treated as a motion for a directed verdict, and refused. Defendant's motion now requires that the evidence be re-examined to determine whether these actions were proper or not. The standards as to whether the directed verdict should have been given are the same as the standards which now must be applied on this motion. Simply stated the question which now must be answered is, was there any substantial evidence to take the case to the jury? 2B Barron & Holtzoff Federal Practice and Procedure, § 1075, p. 375, § 1079, pp. 410–415.

In 30 Am.Jur., Judgments, § 300, pp. 354–355, cited with approval in Green v. Gulf, Mobile & Ohio Railroad Co., 244 Miss. 211, 141 So.2d 216, it is stated.

"In determining whether to render a judgment non obstante veredicto, the court is not justified in trespassing on the province of the jury to be the judge of all questions of fact in the case, and the party favored by the verdict is entitled to have the testimony read in the light most advantageous to him, and to be given the benefit of every inference of fact fairly deducible therefrom. Accordingly, an application for such judgment will be refused where there is evidence

tending to support the verdict, or where there is a conflict of evidence, so that the jury could properly decide, either way, even though the conflict is such that the court would be justified in granting a new trial * * *."

▪ A motion for a judgment notwithstanding the verdict differs from a motion for a new trial in that the court in considering a motion for a judgment notwithstanding the verdict is not free to weigh the evidence. Hamilton Foundry & Mach. Co. v. International Molders and Foundry Workers Union of North America, (6 Cir.1952), 193 F.2d 209; Kimmel v. Yankee Lines, Inc., (D.C.Pa. 1954), 125 F.Supp. 702, affirmed (3 Cir. 1954), 224 F.2d 644. Also the fact that the court may feel that the testimony is unworthy of credit is not a proper ground for granting judgment notwithstanding the verdict for the question of credibility of witnesses is within the jury's sole province. Thieman v. Johnson, (8 Cir.1958), 257 F.2d 129. This difference is pointed out in 49 C.J.S. Judgments § 60, pp. 166–167, where it is stated as follows:

"Where, in passing on a motion for judgment notwithstanding the verdict, the court may consider the evidence, it is required to be governed by the rules which govern it in passing on a motion for a directed verdict; such motions have the same effect, and the power of the court is the same in both cases. These motions present only a question of law as to whether or not, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the party against whom the motion is directed, there is a total failure or lack of evidence to prove any necessary element of his case; and all reasonable doubts must be resolved in favor of the

1. Rule 50, Federal Rules of Civil Procedure.

verdict. Thus, in passing on the motion, the trial court may not weigh all the evidence of both sides or judge of the credibility of the witnesses, as it may do on a motion for a new trial * * *."

This rule has been announced in numerous cases in this state and is stated in Meaut v. Langlinais, 240 Miss. 242, 126 So.2d 866, as follows:

"The established rule in Mississippi in determining whether a party is entitled to a directed verdict or a peremptory instruction is that the court must look solely to the testimony on behalf of the party against whom the directed verdict is requested and must take that testimony as absolutely true, along with all reasonable inferences which could be drawn therefrom, favorable to such party. (Citing cases)."

To the same effect is Grice v. Central Electric Power Association, 230 Miss. 437, 92 So.2d 837, 96 So.2d 909, where it is stated:

"It is also unnecessary to cite the decisions supporting the well-established rule that in determining whether the defendant is entitled to a directed verdict, the evidence must be treated as proving every fact favorable to the plaintiff's case which is established either directly or by reasonable inference * * *. The same rule applies to a motion for a judgment notwithstanding the verdict."

The street intersection at which the collision occurred was controlled by traffic lights of the usual kind which could show red (stop), yellow (caution) or green (go) with respect to each direction of travel. There was no intimation in the evidence that these lights were not working properly. Hence, if the light was green for one direction of travel, it could not be green for the other. § 8157, Mississippi Code Annotated (1942).

The substance of the evidence for plaintiff on liability was that as her husband's vehicle approached to enter the intersection from the West, it was traveling at about 20 miles per hour, the traffic light was green and no other vehicle was in the intersection or approaching closely thereto. The substance of the evidence for defendant on liability was that as he drove his vehicle toward the intersection from the South at a speed of about 25 or 30 miles per hour, no other vehicle was in the intersection, the light was green for his direction of travel, he did not decrease his speed as he approached the intersection and did not look to his left (West) from which direction plaintiff's vehicle was then approaching—obviously closely.

The street on which the Ries vehicle was traveling runs East and West and is a boulevard type thoroughfare with a neutral parkway in the center dividing that portion which is for use by Eastbound traffic from that portion which is for use by Westbound traffic. The portion for use by Eastbound traffic can accommodate three vehicles from curb to curb. The street on which defendant was driving runs North and South and has no neutral or parkway strip. It is approximately the same width from curb to curb as that part of the street in which the Ries vehicle was moving. Seemingly, the point of impact was in the Northeast quarter of the intersection made by the North-South street and the portion of the East-West street which was for use by Eastbound traffic. The Ries vehicle was traveling in the Northernmost part of the Eastbound traffic portion of its street. Apparently the front of the Ries vehicle collided with the left rear of the Sanders vehicle. From this defendant argues that the Sanders vehicle must have been in the intersection first. But, this is not so on this record since the speed of neither vehicle is fixed with certainty; the exact distance from the West side of the intersection to the point of impact is not

fixed nor is the exact distance from the South side of the intersection accurately fixed to said point. Defendant testified that he did not see the Ries vehicle until it was "right on him" and that he then immediately accelerated his automobile to the maximum. Both he and another witness testified and indicated on a blackboard in the presence of the jury that the front end of defendant's vehicle was about even with the South curb of the neutral strip or parkway at the time of impact. Thus, the jury could have found that the rear of defendant's vehicle at that time was at least midway of the Eastbound part of the street on whch the Ries vehicle was moving.

Considering only this one aspect of the case, it is obvious that the jury could have found, among other things, a) that the Ries vehicle was in the intersection first, b) that the Sanders vehicle was in first, or, c) that both vehicles came in at about the same time. The cases cited by defendant on this point wherein accurate calculations were made from known distances, known positions or known speeds have no application here.

Most of those cases were concerned with denials by the trial court of motions for new trial wherein the court was concerned with the weight of the evidence. Such is not the case here since this court cannot on this motion now weigh the evidence.

But, assuming arguendo that the evidence required a finding that defendant's automobile was in the intersection first (which as has been shown it does not) defendant's position overlooks the proposition that the jury could have found that he drove into the intersection against a red light and that the jury could have found that he drove in on a green light, but negligently at a time when, because of the position and speed of the Ries vehicle, it was dangerous to do so. 60 C.J.S. Motor Vehicles § 363, pp. 880–881.

■ Considering only the evidence favorable to plaintiff on liability without weighing it in any way, but accepting it as true, and considering all of the reasonable inferences to be drawn from such acceptedly true evidence, the jury could have found defendant guilty of one or more of the following negligent acts and could have found that one or more of them proximately caused or proximately contributed to the collision:

1) That he entered the intersection when the traffic light showed red (stop) in his direction of travel.

2) That he entered the intersection after the Ries vehicle was already in, entering or dangerously close thereto.

3) That he failed to look to his left (West) as he approached the intersection. He admitted that this was true and it must be borne in mind that this was the direction from which the Ries vehicle approached and entered the intersection. His view to his left was unobstructed and he testified that he could have seen the Ries vehicle if he had looked to the left.

4) That he failed to decrease the speed of his vehicle as he approached this intersection. This he also admitted and this is required by statute in Mississippi.[2]

2. § 8176(b), Mississippi Code 1942 (Recompiled) reads as follows:
   "(b) The driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic, or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements."

With respect to this last phase of the case, as it bears on defendant's motion, defendant complains that the court instructed the jury that this failure was negligence on the part of defendant. The court also instructed the jury that to find for the plaintiff on this theory the jury had to find from a preponderance of the evidence that this negligence was the sole proximate cause of the collision or a proximate contributing cause thereof. In Hill v. Columbus Ice Cream and Creamery Co., 230 Miss. 634, 93 So.2d 634, which was a case arising from an intersectional collision, in dealing with an instruction concerned in principle with this very question, the court said:

"The appellant also complains at the action of the trial court in granting instruction No. 13 to the appellee, which is as follows: 'The court instructs the jury for the plaintiff and cross-defendant, Columbus Ice Cream & Creamery, that even though you may believe from a preponderance of the evidence that Dempsey Hollis was driving the ice cream truck more than 45 miles per hour just before the collision and application by him of his brakes, such fact, if you should believe it to be a fact from a preponderance of the evidence, does not, in and of itself, raise any presumption of negligence on the part of Dempsey Hollis nor entitle Clyde Hill to a verdict against plaintiff and cross-defendant Columbus Ice Cream & Creamery Company.' Section 8176, Code of 1942, as amended by Chapter 328, Laws of 1948, fixes a speed limit of 45 miles per hour for trucks or truck-trailer combinations except as to 'pick-up' trucks of one-half ton and under. It is undisputed that the appellee's truck was not a pickup truck. *Said section, as amended, further provides that the driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection.* Instruction No. 13 told the jury that even though Hollis was violating the law in driving the truck at a speed of more than 45 miles per hour, such fact does not, in and of itself, raise any presumption of negligence on the part of the said Hollis nor entitle the appellant to a verdict. [Emphasis added.]

"We have held that the violation of a statute constitutes negligence. In the case of Terry v. Smylie, 161 Miss. 31, 38, 133 So. 662, 663, this Court said: 'According to the undisputed evidence, appellants were violating this statute at the time their car struck the car occupied by appellee. The evidence further showed without conflict (the testimony of appellants, as witnesses in their own behalf) that the speed of their car proximately contributed to the injury. Appellants were violating the speed statute enacted for the safety of the traveling public. *This was negligence on their part,* the proximate result of which was the injury to appellee.' * * *

"In the case of Wilburn v. Gordon, 209 Miss. 27, 50, 45 So.2d 844, 847, we held that the trial court was in error in refusing an instruction which said in part: 'The Court instructs you that the failure of any person to perform a duty imposed upon him by statute is negligence in itself.' We think that instruction No. 13 was in direct conflict with these authorities."

From the aforementioned authorities, it seems clear that it was proper for the jury to be told that defendant's violation of a statutory duty was negligence, and to leave to the jury to determine from the evidence whether such negligence was actionable or not. It should also be taken into account that the court instructed the jury that plaintiff's husband, the driver of the vehicle

in which she was riding, was also guilty of negligence in violating a posted speed limit and here it was left also to the jury to determine from the evidence whether or not this negligence was the sole proximate cause of the collision.

Other than the one point urged by defendant in which he claims that it was impossible for the Ries vehicle to have entered the intersection first, which has been dealt with previously, the main thrust of his argument is that the testimony of plaintiff and her husband cannot be believed since neither of them saw the automobile with which the Ries vehicle collided, and neither of them know anything from the time when, as they say, the Ries automobile entered the intersection on a green light when no other vehicle was in or dangerously near thereto. Plaintiff and her husband were both injured seriously in the collision. They both were unconscious for some time after the impact. Neither of them remember anything from the time they entered the intersection until they regained consciousness in the hospital.

Evidentially defendant's position is strenghtened by the testimony of a medical expert to the effect that plaintiff and her husband both, because of the extent and nature of their injuries, suffered from retrograde amnesia and neither of them had any real or genuine recollection as to anything which transpired for some time preceding the collision. However, to follow this argument would require the court to weigh the evidence, which, as has been said, cannot be properly done on this motion. Weighing the evidence, determining the credibility of witnesses, finding the truth from conflicting evidence or by interpreting physical facts are, and were in this case, peculiarly functions of the jury.

Defendant also contends that plaintiff could not have met the burden of proof; that there are several hypotheses consistent with this evidence other than actionable negligence on the part of defendant and that, therefore, the motion should be sustained. He cites in support of this proposition Dreijer v. Girod Motor Company, (C.A.5, 1961), 294 F. 2d 549; Conley v. McCommon, (Miss.) 33 So.2d 306 and Equitable Life Assurance Society v. Mitchell, 201 Miss. 696, 29 So.2d 88. But these arguments, contending as they do that the evidence establishes no more than a conjecture or possibility of actionable negligence on the part of defendant, overlook the facts that plaintiff and her husband both testified positively that the Ries vehicle entered the intersection at a speed of about 20 miles an hour on a green light at a time when no other vehicle was in the intersection or dangerously near thereto. If the jury believed this testimony (as apparently they did) they were bound also to believe that defendant entered the intersection on a light which was not green. The argument also leaves out of consideration the testimony of defendant that he did not decrease his speed as he approached this intersection; that he did not look to his left but looked straight ahead and that if he had looked to his left he would have seen the Ries vehicle which had to be at that time either in, entering or approaching dangerously close to the intersection. With the differing facts and different evidence here, those cases are not authority in this case.

Defendant's motion for judgment non obstante veredicto is not well taken and will be overruled.

Turning now to plaintiff's motion to set aside the verdict and award a new trial as to damages only, it is necessary to review to a substantial degree the evidence of injury and expense. At the same time the basic theory upon which the case was tried and submitted to the jury on instructions of the court must be kept in mind. Although defendant plead that plaintiff and her husband were on a joint venture and that plaintiff was chargeable with the negligence of her husband (which defendant alleged was the whole of the negligence which caused

the collision) this theory was abandoned and not urged on the court by special request for instructions or otherwise. Hence, the case was submitted to the jury on instructions which authorized them to find for the defendant if plaintiff's husband was guilty of negligence which was the sole proximate cause of the collision. And the jury was instructed that if they found from a preponderance of the evidence that defendant was guilty of negligence which proximately caused or proximately contributed to the collision, the verdict should be for the plaintiff, *in which event it would be the duty of the jury to award plaintiff full damages*. In other words, the jury was told in substance that they could not diminish the damages to be awarded to plaintiff, in the event the verdict was for her, because of any negligence on the part of plaintiff's husband, but that they should find the verdict for defendant if they found that plaintiff's husband was guilty of all of the negligence which caused the collision. No objections were made or exceptions taken to this fundamental aspect of the instructions given to the jury.

At the time of her injury and this collision, plaintiff was 60 years old and had a life expectancy of more than 16 years according to recognized standards. Except for minor ailments she was a vigorous woman who not only attended to the usual household chores of a wife in a farm home but also was able to and did mow the lawn, work in the family garden and drive sometimes a farm tractor.

As a result of this collision, the proof shows that plaintiff suffered a fracture of seven ribs, a fractured vertebra, a fractured clavicle, a fractured acromion process, a Colles's fracture of the left wrist and four fractures of the pelvis. The proof shows further that plaintiff was confined to a hospital for a period of 61 days during which time she suffered extreme pain; that she has suffered pain continuously since her release

from the hospital on January 12, 1962; that she will continue to suffer pain for the rest of her life; that during her stay in the hospital and continuously since then until now it has been necessary for her to take regularly pain relieving drugs and medicines and that she will continue to be required to purchase drugs and medicines to ease her pain. Further, the proof shows that plaintiff has suffered a permanent loss of motion in her left wrist, right shoulder, left leg and right leg. The medical proof is uncontradicted that she will have a permanent disability of forty percent of her body as a whole. It was stipulated that plaintiff's medical and hospital expense to the date of the trial had amounted to $2,696.97.

For a long time after her release from the hospital, plaintiff could not do anything of any consequence. She could move from the bed to a chair with help, but could not even dress herself. By the end of about four months, plaintiff first became able to do an extremely limited amount of housework.

The first month of her confinement in the hospital was to her a "bad dream", after which time she began to gradually regain full consciousness. Before this accident she was generally free of pain. Since her injury she is in constant pain and suffers chronic headaches and neck discomfort and other pains "all over".

■ ■ It is well established that a court may set aside a verdict and grant a new trial where the award of damages is clearly unjustified, if such as would shock the conscience of the court, or is such as to indicate that the jury acted as a result of passion, prejudice or other improper motive. Springer v. J. J. Newberry Company, (D.C.Pa.1951), 94 F. Supp. 905, affirmed (3 Cir.) 191 F.2d 915; Wooley v. Great Atlantic and Pacific Tea Company, (3 Cir., 1960), 281 F.2d 78 and 66 C.J.S. New Trial § 75. The same principle governs the right of the court to set aside a verdict when it is attacked for inadequacy as when

it is attacked for excessiveness. De Foe v. Duhl, (4 Cir., 1961), 286 F.2d 205.

■ A general statement of the rules which are applied in such a situation appears in 39 Am.Jur., New Trial, § 147. It is as follows:

"* * * It is generally recognized that the court may order a new trial in an action for personal injury where the smallness of the award induces the conviction that the verdict was the result of a mistake, misapprehension, oversight, or misconduct such as passion, prejudice, or partiality, on the part of the jury. Relief will be granted where the finding is 'grossly' inadequate and the compensation given entirely disproportionate to the injury which is proved to have been sustained, or where it appears, upon the facts proved, that the jury must have omitted to take into consideration some of the elements properly involved in the plaintiff's claim.

Verdicts have been set aside where the award consisted of nominal damages, and also where damages assessed at a considerable sum, were found by the court not to constitute substantial compensation for the injury."

These rules are in keeping with the jurisprudence of this state. Numerous jury verdicts have been set aside on the sole ground that the amount awarded by the jury was inadequate. Scott v. Yazoo & M. V. R. Co., 103 Miss. 522, 60 So. 215; Whitehead v. Newton Oil & Mfg. Co., 105 Miss. 711, 63 So. 219; White v. McRee, 111 Miss. 502, 71 So. 804; Walker Bros. v. Nix, 115 Miss. 199, 76 So. 143, 563; McLaughlin v. R. W. Fagan-Peel Co., 125 Miss. 116, 87 So. 471; Coccora v. Vicksburg Light & Traction Co., 126 Miss. 713, 89 So. 257; Hicks v. Corso & Cefalu, 131 Miss. 659, 95 So. 636; Ozen v. Sperier, 150 Miss. 458, 117 So. 117; Barr v. Gulf M. & N.

R. Co., 168 Miss. 863, 152 So. 294; Faulkner v. Middleton, 186 Miss. 355, 188 So. 565, suggestion of error overruled, 186 Miss. 355, 190 So. 910; Gill v. Eakin, 203 Miss. 204, 33 So.2d 821; Swartzfager v. Southern Bell Tel. & Tel. Co., 236 Miss. 322, 110 So.2d 380; Murray v. Murray, 239 Miss. 691, 125 So.2d 82.

In reversing cases and remanding for a new trial because of an inadequate award of damages the Supreme Court of Mississippi has said, with respect to the award, such things as that it was "grossly inadequate" (Whitehead v. Newton Oil & Mfg. Co., supra), "manifestly insufficient, and wholly inadequate to compensate" (Walker Bros. v. Nix, supra) and that "the jury did not respond to reason upon the evidence produced" (Faulkner v. Middleton, suggestion of error, supra).

■ Here this court is bound to say that the award to plaintiff of $2,303.03 as compensation for all elements of her damages other than her stipulated medical and hospital expense is manifestly insufficient and wholly inadequate to compensate; that it is grossly inadequate to such an extent that it is apparent that the jury did not respond to reason upon the uncontradicted evidence of damage produced and to let this award stand approved by it would shock the conscience of this court. Cf. Gill v. Eakin, supra.

■ Having disapproved the award of damages it now remains to be decided whether a new trial as to damages only will be ordered. Such action is authorized.[3] This may properly be done if "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice" Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188. A new trial for damages only has been approved in this circuit in Great Atlan-

---

3. Rule 59(a), Federal Rules of Civil Procedure.

tic and Pacific Tea Co. v. Jones, ( 5 Cir., 1961), 294 F.2d 495,[4] saying that it is a matter of discretion.

In Darbrow v. McDade, (3 Cir., 1958), 255 F.2d 610, a personal injury damage suit, the court approved the action of the trial court in setting aside as inadequate the first jury award and ordering a new trial on damages only. The court relied on the Gasoline Products case, supra, saying, inter alia:

"* * * Under the facts of this case, however, where the verdict determined the issue of the defendant's liability but the jury failed to include all the elements of damages, *we cannot say that the district court abused its discretion when it held that the issues of liability and damages were so distinct and separable that a retrial of the issue of damages alone could be had without injustice.*" (Emphasis added.)

Darbrow is highly persuasive here. Plaintiff there was not chargeable with contributory negligence. Here the jury was instructed that if they found for plaintiff they should award her full damages. They could not diminish the award to her on account of contributory negligence on the part of her husband.

To like effect, in principle, are Devine v. Patteson (6 Cir. 1957) 242 F.2d 828 and Indamer Corporation v. Crandon (5 Cir. 1954) 217 F.2d 391.[5]

To this court it seems clear that the jury verdict fixed defendant's liability for all her damages, that the issue of damages is so distinct and separable from the issue of liability that a new trial as to damages only may be had without injustice.

This court is also persuaded to this view by the fact that the courts of Mississippi have been committed to new trials as to damages only at least since Whitehead v. Newton Oil & Mfg. Co., supra. And, if defendant has, or can get any evidence to contradict proof of plaintiff's damages, he will have a second and full opportunity to present all of it on the new trial as to damages only which will be ordered. Devine v. Patteson, supra.

Upon the two exceedingly narrow and exceedingly difficult issues presented by these two motions, which as to both greatly limited the authority of this court to act, disposition is being made within the limits established by the parties.

Order is being entered overruling defendant's motion for judgment notwithstanding the verdict and sustaining plaintiff's motion for a new trial on the issue of damages only.

4. The trial court overruled a motion for new trial only. The Court of Appeals said that the district court had the authority to sustain such a motion, but affirmed the exercise of discretion by that court.

5. The Court of Appeals there reversed the action of the trial court in *overruling* a motion for new trial as to damages and ordered a new trial on damages only.